IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Abdullah Mallick Holmes,<br><br>                Plaintiff,<br><br>v.<br><br>T.A. Van Doran, *Detention Director*; Richard Darling, *Operations Lieutenant*,<br><br>                Defendants. | C/A No. 0:11-1325-JMC-PJG<br><br><br>**REPORT AND RECOMMENDATION** |

      Plaintiff, Abdullah Mallick Holmes, ("Plaintiff"), a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983 claiming a violation of his constitutional rights while he was a pre-trial detainee at the Dorchester County Detention Center. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 39; see also ECF No. 46.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Holmes of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 44.) Holmes filed a response in opposition and cross motion for summary judgment. (ECF No. 53.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted and Holmes's motion should be denied.

**BACKGROUND**

      This case arises from three altercations between Holmes and other detainees at the detention center in 2009 and 2010. Holmes alleges that the defendants' negligent supervision of the staff and

*PJG*

facility resulted in a failure to protect him, and that the defendants violated his due process rights by failing to follow proper procedures in response.

The unrefuted evidence shows as follows. On October 1, 2009, a fight occurred between Holmes and inmate James Cobb during the recreation period. After an officer issued a radio alert, at least six officers responded. (ECF No. 46-2 at 2.) Holmes was treated for a swollen eye and other bruising with Tylenol and Motrin. (ECF No. 46-2 at 4, 5.) Cobb was later subjected to a disciplinary hearing through administrative procedures, found guilty, and placed in maximum security. (ECF No. 46-3 at 10.) Holmes filed a grievance requesting copies of paperwork, complaining that the incident was not handled properly, and indicating that he wished to file criminal charges against Cobb and "the other inmates that were involved." (ECF No. 46-3 at 8.) Defendant Darling responded to his grievance and advised Holmes how to pursue additional charges by filing courtesy summons, but Holmes did not do so. (ECF No. 46-3 at 10; Van Doran Aff. ¶¶ 9-11, ECF No. 39-3 at 3.)

The second incident occurred on July 13, 2010 when Holmes's cellmate was released from his cell for a medical appointment. While the cell door was open, inmate Joe Weaver entered the cell to assault Holmes and Holmes ran out. (ECF No. 46-3 at 12; Van Doran Aff. ¶ 12, ECF No. 39-3 at 3.) A third inmate alerted officers to a fight. At least two officers responded and Weaver was subdued. Holmes does not allege any injury related to that incident. Holmes claims that when Weaver threatened him through his cell bars a week before, Holmes pressed a 911 emergency call button but no one responded. He also claims that he later "informed officers" about the threat, but "no action was taken." (Compl., ECF No. 1, at 5.) The record shows that Holmes did not pursue any administrative remedies related to that incident.

*PJG*

In the third incident on November 13, 2010, Holmes claims that a cellmate manipulated the cell door lock and three other inmates entered his cell, resulting in a fight. At least four officers responded within a matter of seconds. (ECF No. 46-4 at 5, 15; Compl., ECF No. 1 at 5.) Holmes sought medical treatment for bruising. (ECF No. 46-4.) After an investigation and hearing, Holmes was found guilty of disciplinary violations related to that altercation. (ECF No. 46-4 at 9; Van Doran Aff. ¶ 13, ECF No. 39-3 at 3.) The record shows that Holmes went through the grievance process and Defendant Darling reviewed his conviction and denied the appeal. (ECF No. 46-6 at 2.) Holmes alleges that he requested to file criminal charges against the other inmates and argues that he sought the necessary paperwork, but that one of the DCDC officers told him "there were not any in file that she could find." (Compl., ECF No. 1 at 5.)

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.

*PJG*

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Pre-Trial Detainees**

The Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's proscription against cruel and unusual punishment, governs cases in which pre-trial detainees allege constitutional violations. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The Supreme Court explained this distinction as follows:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without



such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977) (citations omitted). Nonetheless, "[b]ecause both the Fourteenth Amendment's Due Process Clause and the Eighth Amendment address the permissibility of punishment, decisions addressing the dimensions of the Eighth Amendment's prohibition of cruel and unusual punishment provide[] guidance for analysis under the Due Process Clause in several respects." Evans v. City of Sumter, S.C., No. 3:07-2688-JFA-JRM, 2008 WL 4177225, at *5 n.4 (D.S.C. Sept. 3, 2008). "[T]he due process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Id. (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)). "[I]n defining conduct that gives rise to liability under § 1983, the evolving standard has been "deliberate indifference." Id. (citations omitted). The Fourth Circuit has addressed the deliberate indifference standard as follows: "[T]he relevant question is whether [an inmate] has alleged that the defendants wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm posed by [another inmate]." Ruefly v. Landon, 825 F.2d 792, 793 (4th Cir.1987). The Supreme Court has concluded that to show deliberate indifference with regard to an inmate's physical injury, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).

**C.     Failure to Protect**

Holmes's claims, liberally construed, allege that the defendants were negligent in their supervision of the detention center staff and maintenance of the facility, resulting in a failure to

protect him from the inmate assaults. Based on the record presented, the court finds that the defendants are entitled to summary judgment because (1) negligence is not actionable under § 1983; (2) Holmes failed to exhaust administrative remedies with regard to the second incident; and (3) the defendants are entitled to qualified immunity.

The court agrees that the defendants are entitled to summary judgment because there is no evidence that the defendants were deliberately indifferent to any specific risk, and even assuming some type of negligence, negligent conduct is not actionable under § 1983. Whether in the context of prisoner failure to protect cases under the Eighth Amendment or the Fourteenth Amendment, there is no constitutional violation by the negligent failure to protect. "The Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." Davidson v. Cannon, 474 U.S. 344, 347 (1986) (citing Daniels v. Williams, 474 U.S. 327 (1986)). The Supreme Court decided both Davidson and Daniels on the same day. In Daniels, a prisoner was hurt in a slip and fall. In Davidson, a prisoner reported a threat by another inmate to a prison supervisor. The supervisor gave the note to a sergeant, who did not read it before he left for the weekend. Over the weekend, the prisoner suffered injuries in an attack by the other inmate. In both cases, the Court found that negligence is not actionable under § 1983 because that section is only "intended to remedy *intentional* deprivations of constitutional rights." Allen v. S.C. Dep't of Corr., No. 4:05-1582-DCN-TER, 2006 WL 305318 (D.S.C. Feb. 8, 2006) (emphasis in original) (discussing Davidson and Daniels in prisoner negligence claim).

Here, Holmes has alleged, at most, negligent—not deliberate— acts against the defendants. Holmes argues that officers were not at their assigned posts for either incident to intercede or prevent the attacks and that there were facility maintenance issues. In support, Holmes points to Defendant

Darling's statement that "we were approximately twelve personal [*sic*] down at the time of [the first] incident," and that "[c]oncerning cameras, equipment malfunctions do occur." (ECF No. 53-2 at 2.) As to the first incident, Holmes contends that, in light of the staffing and camera issues, inmates should not have been allowed "out of their cells for recreation while being unsupervised." (Pl.'s Resp. Opp'n Summ. J., ECF No. 53-1 at 2.)

Holmes's assertions fail to show that the individual defendants were aware of any specific risk to Holmes. The undisputed evidence shows that the first fight was "spontaneous and spur-of-the-moment," (Darling Aff. ¶ 6, ECF No. 39-2 at 2), and that at least six officers responded. Holmes has failed to offer any evidence refuting Van Doran's attestation that "neither I nor my staff were warned in any way that this fight would occur." (Van Doran Aff. ¶ 8, ECF No. 39-3, at 3.)

Regarding the third incident, Holmes also complains that there was no "911 call button connected in my cell." (Compl., ECF No. 1 at 5.) Again, the undisputed evidence shows that at least four officers responded to break up the fight within seconds. Moreover, Holmes has provided no authority suggesting any constitutional duty to provide such specific security measures. Rather, the United States Supreme Court has held that prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take *reasonable* measures to guarantee the safety of inmates. See Farmer, 511 U.S. at 835. The fact that the detention center utilizes cameras and 911 call buttons demonstrates a facility feature not to punish but to enhance security and prisoner protection. To the extent Holmes's claim is based on the malfunction of those safety features, general negligence with regard to maintenance of a facility is insufficient to make a claim. See Daniels, 474 U.S. at 329.

PJG

Moreover, Holmes's allegations against both defendants appear to be based solely on their roles as supervisors, and not on any personal knowledge of a risk or indifference to Holmes's safety or health. As such, those claims are not actionable. A claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates) Courts in this district have recognized in circumstances similar to those presented here that to hold a supervisor liable for a constitutional violation of a pre-trial detainee's Fourteenth Amendment rights, a plaintiff must show that the official obdurately and wantonly failed to take precautions for the prisoner's safety in deliberate indifference to a specific risk of known harm. See Matheny v. Fields, No. 4:09-cv-644-RBH, 2010 WL 844600, at *6 (D.S.C. 2010) (citing Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991)). Holmes has made no such showing.

PJG

Additionally, although the defendants concede that Holmes exhausted his administrative remedies for the first and third incidents, they have demonstrated on this record that Holmes did not file any grievances with regard to the second incident. Accordingly, the record shows that the defendants are entitled to judgment as a matter of law with regard to Holmes's claims as they relate to the second incident, pursuant to the exhaustion mandate of the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under § 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Pretrial detainees are specifically included in this requirement pursuant to § 1997e(h), which defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."

Finally, because Holmes cannot establish any constitutional violation on the part of the defendants, they are entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223 (2009).

For all of these reasons, Van Doran and Darling are entitled to summary judgment on Holmes's claims stemming from the inmate fights.

**D.      Due Process and Prison Policy**

Holmes also appears to argue that he was not "afforded due process protection" and the defendants failed to follow procedures in dealing with the altercations. These claims also fail as a matter of law.

First, violations of prison policies alone do not rise to the level of a constitutional deprivation. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily

PJG

established by the state"); Riccio v. Cnty. of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Second, insofar as Holmes's Complaint may be construed to seek damages for a due process violation in connection with his disciplinary conviction arising out of the third incident, he is not entitled to pursue such a claim because he has failed to present any evidence that his conviction was overturned, and success on this claim would necessarily imply the invalidity of his disciplinary conviction. A plaintiff cannot recover damages on a § 1983 civil rights claim for an allegedly unconstitutional conviction without first having that conviction reversed, expunged, or called into question by a writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477 (1994). The rule in Heck applies to prison disciplinary convictions as well as criminal ones. See Edwards v. Balisok, 520 U.S. 641 (1997). Finally, to the extent Holmes complains that his attackers were not criminally prosecuted, such a claim fails as a matter of law, because no citizen has an enforceable right to institute a criminal prosecution. See Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990).

**E.     Other Claims**

To the extent that Holmes's Complaint may be construed to allege any other constitutional violations, the court finds that he has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). To the extent that Holmes's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

Page 10 of  12

PJG

**RECOMMENDATION**

For the foregoing reasons, the record shows as a matter of law that Holmes is not entitled to the relief he seeks. Accordingly, the court recommends that the defendants' motion for summary judgment be granted (ECF No. 39) and Holmes's cross motion be denied (ECF No. 53).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 28, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).